MARTIN J. KELLY, INC. *v.* LOCAL UNION 677,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND
HELPERS OF AMERICA

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, JS.

Argued October 13—decided December 23, 1964

*Norman Zolot,* with whom was *John V. Cassidento,* for the appellant (defendant).

*William J. Larkin 2d,* for the appellee (plaintiff).

MURPHY, J.   Subsequent to the execution of a collective bargaining agreement between the plaintiff and the defendant on September 19, 1961, and prior to February 6, 1963, when the defendant was decertified as the representative of the plaintiff's employees, the defendant sought arbitration of certain grievances by the arbitrator named in the agreement.  The plaintiff denied that the arbitrator had jurisdiction and refused to participate in the arbitration.  The arbitrator then heard the matter and made an award.  The plaintiff applied to the Superior Court to vacate the award, and from the judgment vacating it the defendant appealed.

The finding as corrected includes the following facts: In 1959, the defendant union was certified by the National Labor Relations Board as the collective bargaining agent for the employees of the plaintiff corporation, which conducted a tree service business in interstate commerce.   Thereafter, the plaintiff and the union executed a collective bargaining agreement which expired June 1, 1961.  Prior to that date, the plaintiff and the union orally agreed to the terms

of a new contract, which the plaintiff's attorney was to reduce to writing. The written contract was submitted to and was executed by the parties on September 19, 1961, but was dated June 1, 1961. It was for one year, with an automatic renewal provision by which it was to be continued from year to year unless "either party . . . [gave] written notice" to the contrary at least sixty days before the end of any effective period. On September 11, 1961, certain of the plaintiff's employees petitioned the N.L.R.B. to have the union decertified as the collective bargaining agent. This was accomplished on February 6, 1963, after certain procedural delays and two elections in which a majority of the employees voted against the union. The 1961 contract contained a grievance procedure and provided for arbitration of all disputes by the Connecticut state board of mediation and arbitration, hereinafter called the board, whose decision was to be final and conclusive unless "contrary to law."

The collective bargaining agreement provided for a union shop, employees being required to join the union thirty days after being employed; for the discharge of employees who failed to pay initiation fees and join the union or to pay dues to it; for the deduction of initiation fees and dues by the plaintiff from employees' pay and remittance of them to the union; for call-in pay for employees who reported for work which did not materialize; and for seniority, with employment preference given to senior employees. Following the September 11 petition to have the union decertified, the plaintiff and the union, on September 26, 1961, agreed to a consent election to be held on October 10, 1961. A majority of the employees voted against the union, but the N.L.R.B. set aside the election because it

considered that the plaintiff had interfered with a free election by posting a notice that it was suspending collection of union dues and fees. A second election was ordered. We need not detail the legal maneuvers which delayed the finality of the decertification process. The second election was eventually held on January 29, 1963, and the union was finally decertified on February 6, 1963.

In October, 1961, the union demanded remittance of union dues and fees and the discharge of two employees whose fees and dues had not been paid. On November 20, 1961, and on December 14, 1961, the union sought arbitration by the board of certain grievances: (1) The failure to discharge the two employees, to pay their initiation fees and dues, and to reimburse other employees whose recall rights were affected by the failure to discharge; (2) the refusal of the plaintiff to check off and remit dues; (3) the failure of the plaintiff to pay call-in pay to four employees who reported for work on November 7, 1961; (4) the giving of preference to two junior employees on November 7, 1961, while senior employees were on layoff. The plaintiff refused to participate in the arbitration on the ground that the contract between the parties became unenforceable after October 10, 1961, the date of the first election, and that the board was ousted of jurisdiction by the pendency of the proceedings before the N.L.R.B. The union insisted on arbitration. When the plaintiff persisted in its refusal, the board heard the matter ex parte on May 10, 1962, and made its award on June 6, 1962. In it, the plaintiff was directed to make the union whole for initiation fees and dues of the two employees whom the union had sought to have discharged and who were then no longer employed by the plaintiff; to reimburse any employees

deprived of work after October 31, 1961, by the
continued employment of those two men; to reim-
burse the union for all dues it had neglected to
collect; and to pay call-in pay to two employees,
and seniority pay to two others, for November 7,
1961.

The court concluded that the collective bargaining
agreement signed on September 19, 1961, became
null and void on October 10, 1961, when the first
decertification election was held, and that the board
lacked jurisdiction to arbitrate the grievances of
the union because of the pendency of the N.L.R.B.
proceedings. It also concluded that the contract
was not automatically renewed on June 1, 1962, and
it vacated the award. The union contends that the
agreement continued in force from June 1, 1961,
until the N.L.R.B. issued its order of February 6,
1963, decertifying the union as the exclusive bargain-
ing representative of the plaintiff's employees. The
union claims that the plaintiff was obligated there-
fore to arbitrate the grievances and abide by the
award of the board.

As the plaintiff is engaged in interstate commerce,
federal substantive law applies in the determination
of this case. *Hudson Wire Co.* v. *Winsted Brass
Workers Union,* 150 Conn. 546, 550, 191 A.2d 557.
The first and controlling question is the duration
of the union's representative status. An employer
is obliged to recognize a union which has been certi-
fied as the collective bargaining agent until the
union is decertified by some action of the N.L.R.B.
*Brooks* v. *National Labor Relations Board,* 348 U.S.
96, 103, 75 S. Ct. 176, 99 L. Ed. 125; *Parks* v. *Atlanta
Printing Pressmen & Assistants' Union,* 243 F.2d
284, 290 (5th Cir.), cert. denied, 354 U.S. 937, 77
S. Ct. 1397, 1 L. Ed. 2d 1537; *National Labor Rela-*

*tions Board* v. *Sanson Hosiery Mills, Inc.,* 195 F.2d 350, 352 (5th Cir.), cert. denied, 344 U.S. 863, 73 S. Ct. 103, 97 L. Ed. 669. The contract continued in full force and effect until decertification. *United Electrical, Radio & Machine Workers* v. *Westinghouse Electric Corporation,* 229 F. Sup. 881, 884 (E.D. Pa.). The failure of the company to give notice of termination automatically renewed the contract for another year on June 1, 1962, and it continued in force until the decertification order was issued on February 6, 1963.

We proceed now to the determination of the board's authority to arbitrate the union's grievances while the decertification proceedings were pending. The arbitration clause in the agreement provided for arbitration by the board of all disputes regarding the application or interpretation of the agreement and that the decision of the board was to be final and binding on all parties unless it was contrary to law. As this clause was a part of the agreement, it naturally continued in operation during the life of the agreement, and since the agreement did not expire until decertification, the board had the authority to conduct the arbitration in accordance with the terms of the arbitration clause. The parties are bound by their contract. The board was given the authority to interpret the collective bargaining agreement and apply it to the grievances submitted by the union. It did not exceed its authority. *Connecticut Union of Telephone Workers, Inc.* v. *Southern New England Telephone Co.,* 148 Conn. 192, 197, 169 A.2d 646. The board did not usurp the authority of the N.L.R.B. by accepting jurisdiction and conducting the arbitration. See *Carey* v. *Westinghouse Electric Corporation,* 375 U.S. 261, 272, 84 S. Ct. 401, 11 L. Ed. 2d 320. Prior to the final

hearing by the board on May 10, 1962, several scheduled hearings were postponed to accommodate the plaintiff before it refused to appear and claimed that the board was without jurisdiction. The board proceeded to hear and determine the grievances ex parte as authorized by law. General Statutes § 52-414; *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 63, 82 A.2d 345. The award was conclusive and binding on the plaintiff, and the court should have so found.

There is error, the judgment is set aside and the case is remanded with direction to render judgment dismissing the plaintiff's application and confirming the award.

In this opinion the other judges concurred.