**INTERNATIONAL UNION OF UNITED BREWERY, FLOUR, CEREAL, SOFT DRINK AND DISTILLERY WORKERS OF AMERICA, AFL–CIO, and Its Local Union No. 163, et al., Plaintiffs,**

v.

**STEGMAIER BREWING COMPANY, Wilkes-Barre, Pennsylvania, et al., Defendants.**

**Civ. A. No. 70–556.**

United States District Court, M. D. Pennsylvania.

Feb. 29, 1972.

---

**1138**

Anthony P. Moses, Wilkes-Barre, Pa., Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa., for plaintiffs.

Bedford, Waller, Griffith, Darling & Mitchell, Wilkes-Barre, Pa., for defendant United Penn Bank.

Allen M. Kluger, Wilkes-Barre, Pa., for defendants Gibbons Brewery and Thomas Federo.

Charles A. Shea, Jr., A. Richard Caputo, Wilkes-Barre, Pa., for defendants Stegmaier Brewing Company and William Novak.

Allen R. Howe, Philadelphia, Pa., Sipser, Weinstock & Weinmann, New York City, for defendants Teamsters Local 102 of the International Brotherhood of Teamsters, Paul Gallagher and Mark Civarello.

## OPINION

MUIR, District Judge.

The question in this case is whether a union which with employers had established a pension plan for employees in the bargaining unit may, after the union is defeated in a certification election, compel arbitration directed towards termination of the pension plan. My view is that the de-certified union does not have standing to compel arbitration.

Jurisdiction of this court is based upon §§ 301 and 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §§ 185, 186. Jurisdiction has also been invoked by Teamsters Local 102 and union trustees appointed by it pursuant to the Federal Declaratory Judgment Acts, 28 U.S.C. §§ 2201, 2202.

In 1954, Local No. 163 of the International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, an AFL–CIO union, was the exclusive bargaining representative for the employees of Stegmaier Brewing Company and several other breweries. In that year, Local No. 163 and the brewing companies entered into a collective bargaining agreement which, among other things, provided for a pension plan for the employees in the bargaining unit. The plan was to continue in effect indefinitely but provided for amendments and termination by joint consent of the companies and the union in the event that unforeseen future conditions would make it impossible to continue the plan. A joint committee of employer and employee representatives administered the plan.

On March 25, 1970, the National Labor Relations Board, after an election, certified Teamsters Local 102 as the exclusive bargaining representative of the employees. Upon succeeding Local No. 163, Teamsters Local 102 and the companies continued in effect the prior collec-

tive bargaining agreement and pension plan which had existed in conjunction therewith. The Teamsters Local designated the same two members then serving on the plan's joint committee as the representatives of the employees. In August, 1970, a new collective bargaining agreement retroactive to the termination of the old agreement was entered into which provided for the continuation of the prior existing pension plan on the same terms and conditions but with an increase in employer contributions.

Twenty-five days after the termination of the old collective bargaining agreement, the displaced Local No. 163 attempted to appoint two persons to replace the two union trustees who had been serving as members of the joint committee of the pension plan. The displaced union also requested that the brewing companies terminate the pension plan and liquidate and distribute the assets. The breweries refused. The displaced union then directed the bank trustee of the plan to withhold any further payments from the pension fund to presently retired former employees and brought this action to compel arbitration.

The employer trustees and the new union trustees substituted Connecticut General Life Insurance Company as corporate trustee in place of the Defendant bank. The Defendant bank has refused to make any payments to pensioners under the plan and has refused to turn over any monies to Connecticut General Life Insurance Company until the Plaintiff unions execute releases which the Plaintiffs have refused to do.

The Plaintiffs contend that the refusal of the trustees appointed by the brewing companies to agree on a plan for termination and distribution of the fund assets created an arbitrable dispute within the meaning of the language contained in the pension plan agreement. The brewing companies refused to submit the matter for arbitration claiming that the Plaintiffs have no standing to request arbitration, that the election of

new representatives by the displaced union was nugatory, and that there is no dispute between the lawful employee trustees and the trustees appointed by the brewing companies, all of which trustees are opposed to termination of the pension plan.

■■■■ It is my view that this pension agreement is not automatically terminated by virtue of one union being displaced by another union. The pension plan and trust agreement contain no provision for termination or continuation in the event of a change in the certified bargaining agent, nor did they provide for termination without the consent of the employers. Under these circumstances the successor union is entitled to be substituted for the displaced union as a party to the pension plan. The displaced union has no right to interfere with the decision of the successor union or the representatives of the latter, nor with the administration of the pension plan after the de-certification. United Brick and Clay Workers of America, AFL–CIO, et al. v. International Union of District 50, UMW, 439 F.2d 311 (8th Cir. 1971). The necessary effect of de-certification is to terminate the right of the displaced union to administer the contract and the pension plan on behalf of the employees in the bargaining unit. The new collective bargaining agent should succeed to the position of the prior union with respect to these matters.

An Order will be entered granting the Defendants' Motion for Summary Judgment and granting the following affirmative relief:

(a) Declaring that Local 102 is the successor to the Plaintiff unions under the plan and trust agreement and is entitled to all of the rights and subject to all the obligations under the plan and trust.

(b) Declaring that all of the rights and obligations of the Plaintiff unions to said plan and trust agreement have terminated.

**1140**

(c) Directing the Plaintiff unions to execute all documents necessary to effectuate the substitution of Local No. 102.

(d) Directing all of the Plaintiffs to cooperate with Local 102, the employers, the employer trustees, and the union trustees, Gallagher and Civarello, by making available to the latter records of all eligible employees which the Plaintiffs or any of them have maintained.

(e) Directing the Plaintiffs to execute appropriate releases to the Defendant bank, and

(f) Directing the Defendant bank to comply with orders of the representatives of the Teamsters Local 102 and of the employers with respect to delivery of assets of the trust.